IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Steven Gebhart, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for temporary total disability ("TTD") compensation and to find that he is entitled to said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found there was some evidence supporting the commission's determination that relator voluntarily terminated his employment pursuant to a settlement agreement rather than subject himself to termination based upon his violation of the employer's work rule (positive drug test). Therefore, the commission did not abuse its discretion in denying relator TTD compensation, and the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision. Although relator clearly disagrees with the magistrate's decision, relator does not set forth a specific objection. Nevertheless, the essence of relator's argument appears to be that the April 6, 2005 settlement agreement must be construed to permit relator to receive TTD compensation. We disagree.
 {¶ 4} An employee is not entitled to TTD compensation when the employee's own actions, rather than the injury, precludes a return to the former position of employment. State ex rel. Jones Laughlin SteelCorp. v. Indus. Comm. (1985), 29 Ohio App.3d 145; State ex rel. Ramirezv. Indus. Comm. (1982), 69 Ohio St.2d 630. As the magistrate notes, the settlement agreement at issue here states that relator voluntarily quit his employment and that he would only be entitled to receive those benefits normally due any employee who voluntarily quits his or her employment. Voluntary abandonment of the former position of employment can prelude TTD compensation. State ex rel. Rockwell Internatl. v.Indus. Comm. (1988), 40 Ohio St.3d 44. Although the language of *Page 3 
the settlement agreement could have been more specific, we agree with the magistrate that the commission's interpretation of the settlement agreement as precluding TTD compensation is not unreasonable. Therefore, we overrule relator's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 PETREE and McGRATH, JJ., concur. *Page 4 
 APPENDIX A IN MANDAMUS {¶ 6} Relator, Steven Gebhart, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation on the basis that relator had voluntarily abandoned his employment and ordering the commission to find that he is entitled to that compensation. *Page 5 
Findings of Fact: {¶ 7} 1. Relator was employed by A.O. Smith Corporation ("Smith") as a truck driver.
 {¶ 8} 2. On March 23, 2005, relator was involved in a motor vehicle accident while he was a passenger in the truck being driven by another employee.
 {¶ 9} 3. Smith, a self-insured employer under Ohio's workers' compensation laws, certified relator's claim for the following condition: "Fracture lumbar vertebra L1."
 {¶ 10} 4. Following the accident and in accordance with company rules, relator underwent a drug screening. The test came back positive for marijuana.
 {¶ 11} 5. Following the positive drug screen test, Smith began termination procedures.
 {¶ 12} 6. On April 6, 2005, relator and Smith reached a settlement agreement regarding relator's status. That agreement provides, in pertinent part, as follows:
 [One] The parties agree to resolve this issue on a non-precedent setting basis, and cannot be used by either party in any other matter or issue the parties have now or may have in the future.
 [Two] Gebharts employment with the Company shall be severed and he shall be deemed a "Voluntary Quit".
 [Three] Gebhart shall receive any benefits normally due any other employee that voluntarily quits.
 [Four] The Company agrees that injuries sustained by Gebhart on 3/23/05 in the truck accident in Tennessee are compensable under applicable worker's compensation laws.
 [Five] The company further agrees not to challenge Gebharts Unemployment Claim. *Page 6 
 {¶ 13} 7. On May 20, 2005, relator filed a request for TTD compensation from May 3 to June 3, 2005. Relator's motion was supported by a Medco-14 form dated May 3, 2005, which indicated that relator had certain physical restrictions which would preclude him from performing his former job.
 {¶ l4} 8. The matter was heard before a district hearing officer ("DHO") on June 23, 2005. At that hearing, the parties submitted a copy of the settlement agreement and a copy of Smith's company policy which both required that an employee injured at work submit to a drug test following the incident and providing that a positive test could lead to termination. The DHO granted relator's request for TTD compensation for the following reasons:
 At hearing today, the employer argued that temporary total disability compensation benefits are not payable due to the injured worker's alleged "voluntary" termination from employment effective 04/06/2005. In support of this defense, the employer submitted a Settlement Agreement, executed by the injured worker, the company and the injured worker's union representative, on 04/06/2005. At paragraph two of the Settlement Agreement, the injured worker's employment with the company was terminated and deemed a "voluntary quit." Numbered paragraph one of the Settlement Agreement further states:
 "The parties agree to resolve this issue on a non-precedent setting basis, and cannot be used by either party in any other matter or issue the parties have now or may have in the future."
 The District Hearing Officer finds the employer's argument that the injured worker's "voluntary quit" constitutes a ban on payment of temporary total disability compensation benefits is not persuasive for two reasons. First, written paragraph one of the Settlement Agreement clearly states that neither party to the agreement can use said agreement regarding or with respect to any other matter or issues the parties have or may have in the future. The District Hearing Officer finds that the present worker's compensation claim is a matter or issue *Page 7 
contemplated by the parties when they entered into the Settlement Agreement. The District Hearing Officer finds that the plain language of the agreement bars use of the Settlement Agreement and the "voluntary quit" provision for purposes of the worker's compensation claim and any issues arising from it.
 The District Hearing Officer finds this interpretation of the agreement is further supported by actions taken by the parties subsequent to it. Specifically, the self-insured employer paid to the injured worker temporary total disability compensation benefits subsequent to the date of the Settlement Agreement. The District Hearing Officer finds these payments evidence of the intent of the parties not to utilize the Settlement Agreement as a bar to payment of temporary total disability compensation benefits.
 Accordingly, the employer's defense in this respect is rejected.
 {¶ 15} 9. Smith appealed and submitted the affidavit of Judy Laughter who stated as follows in the affidavit:
 Steven Gebhart tested positive for marijuana in a post-accident drug test following his motor vehicle accident of March 23, 2005, giving rise to this workers' compensation claim. The Employer, A.O. Smith Corp., then immediately acted pursuant to its written work rules to terminate Mr. Gebhart's employment.
 On April 6, 2005, A.O. Smith and Mr. Gebhart's union entered into an agreement where Mr. Gebhart agreed to voluntarily quit his employment. In that agreement, A.O. Smith agreed to not contest Mr. Gebhart's workers' compensation claim for his alleged injuries of March 23, 2005, by insisting that they were proximately caused by the drugs in his system thus making his injuries noncompensable. However, because Mr. Gebhart voluntarily quit his employment on April 6, 2005, A.O. Smith reserved the right to contest any temporary total disability compensation payable to Mr. Gebhart because, pursuant to paragraph 2 of the settlement agreement, Mr. Gebhart was only entitled to those benefits due to an employee who had "voluntarily quit" his employment. *Page 8 
 {¶ 16} 10. The matter was heard before a staff hearing officer ("SHO") on October 6, 2005, and resulted in an order vacating the prior DHO's order. The SHO denied the request for TTD compensation as follows:
 The Staff Hearing Officer finds that the injured worker was voluntarily terminated his position of employment as of 04/06/2005 entering into an agreement with his employer that his workers' compensation claim would not be contested since Mr. Gebhart agreed to voluntarily terminate his employment instead of being fired based upon his violation of a[n] employer's work rule.
 The Staff Hearing Officer finds a voluntary termination of employment does not have a basis upon which the injured worker is entitled to the payment of temporary total disability compensation benefits.
 The Staff Hearing Officer finds that the injured worker's reasons for not working is based upon factors other than the allowed conditions in the workers' compensation claim.
 It is therefore the order of the Staff Hearing Officer that temporary total disability compensation benefits for the period 05/03/2005 to 08/03/2005 [sic] be denied.
 This order is based upon the Medco-14 filed by the injured worker, the settlement agreement of 04/06/2005, and the affidavit from Julie Laughter dated 10/04/2005.
 {¶ 17} 11. Relator's appeal was refused by order of the commission mailed October 22, 2005.
 {¶ 18} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of *Page 9 
mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 20} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 21} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude the employee from returning to the former position of employment, the employee is not entitled to TTD benefits, since it is the employee's own action, rather than the injury, that precludes a return to the former position of employment. State ex rel. Jones Laughlin Steel Corp. v. Indus.Comm. (1985), 29 Ohio App.3d 145.
 {¶ 22} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally *Page 10 
consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 23} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy which: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 24} In the present case, Smith submitted evidence of its policy which both required that any employee injured during the course of his employment submit to a drug test and further providing that in the event that drug test came back positive for drugs, the employee could be terminated. Under Louisiana-Pacific, Smith met its burden of proving that relator's termination was a result of his violation of the company policy. As such, the employer made a prima facie case that relator's termination was voluntary and should constitute a bar to his receipt of TTD compensation.
 {¶ 25} In response, relator argued that the settlement agreement which he entered into with Smith precluded the use of his voluntarily quitting of his employment against him in any further proceeding. However, the magistrate notes that relator relies solely upon the first paragraph of that settlement agreement and completely ignores the other paragraphs.
 {¶ 26} As noted in the findings of fact, the settlement agreement entered into between Smith and relator, who was represented by his union representative, provides as follows:
 [One] The parties agree to resolve this issue on a non-precedent setting basis, and cannot be used by either party *Page 11 
in any other matter or issue the parties have now or may have in the future.
 [Two] Gebharts employment with the Company shall be severed and he shall be deemed a "Voluntary Quit".
 [Three] Gebhart shall receive any benefits normally due any other employee that voluntarily quits.
 [Four] The Company agrees that injuries sustained by Gebhart on 3/23/05 in the truck accident in Tennessee are compensable under applicable worker's compensation laws.
 [Five] The company further agrees not to challenge Gebharts Unemployment Claim.
 {¶ 27} According to paragraphs two and three of the settlement agreement, relator's termination was deemed a "voluntary quit" and it was agreed that relator would receive what ever benefits normally due any other employee who voluntarily quit their employment. Further, pursuant to paragraph four, Smith agreed to permit relator to file a workers' compensation claim which would allow relator to have his medical bills paid and which could conceivably result in the payment of additional benefits later, i.e., permanent partial disability.
 {¶ 28} Smith also submitted the affidavit of Ms. Laughter from their human resources department. Ms. Laughter averred that Smith had agreed not to contest relator's workers' compensation claim by alleging that his injuries were proximately caused by the drugs in his system thereby making his injuries non-compensable. However, Ms. Laughter indicated that Smith reserved the right to contest any TTD compensation payable to relator by providing that relator would only be entitled to those benefits ordinarily due to an employee who had voluntarily resigned their employment. As indicated previously, an employee is deemed to accept the consequences of *Page 12 
voluntarily abandoning their employment and, where a termination is found to be voluntary, it is the termination and not the injury which causes the employee to be without wages and, as such, TTD compensation is not payable.
 {¶ 29} The commission determined that relator had voluntarily terminated his employment, pursuant to the settlement agreement, instead of being fired based upon his violation of the employer's work rule. The commission determined that it was relator's termination which caused him to be without wages and not the injury. Because the commission cited the evidence upon which it relied and stated its reasoning, this magistrate finds that the commission has not abused its discretion in denying relator's request for TTD compensation.
 {¶ 30} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for TTD compensation, and this court should deny relator's request for a writ of mandamus. *Page 1